(C. D. 383)

Armour & Co. *v.* United States

United States Customs Court, First Division

(Decided October 11, 1940)

*Pickrell & McDonald* (*Eugene R. Pickrell* and *Daniel P. McDonald* of counsel) for the plaintiffs.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.

Before Brown and Walker, Judges

Walker, Judge: This is a suit brought against the United States for the recovery of money claimed to have been illegally exacted as customs duties. The merchandise involved is described on the invoice as "177 barrels inedible tallow, Titre min 40°." The collector of customs assessed duty thereon at the rate of 20 per centum ad valorem under the provision in paragraph 52 of the Tariff Act of 1930 for animal greases, not specially provided for. Plaintiffs thereupon filed this protest claiming the same to be properly dutiable at the rate of ½ cent per pound under the provision in paragraph 701 of the same act for "tallow." The sole question to be determined, therefore, is one of fact, namely, whether the merchandise at the time of importation was grease or tallow.

Each of the parties caused samples of the merchandise to be withdrawn from the barrels in which it was imported for the purpose of being chemically analyzed and subjected to a test known as the titre test, which, it is undisputed, is determinative of the question whether merchandise of the character of that at bar is animal grease or tallow. The result of the titre test is expressed in degrees centigrade, and apparently represents the solidifying point of the fatty acids contained in molten grease or tallow, a titre of 40° C. or higher indicating tallow, and a lower titre indicating that the substance is a grease.

Since our decision turns on the determination of a question of fact, a brief review of the evidence adduced at the trial is in order.

Plaintiffs offered the oral testimony of Kenneth E. Johnson, a chemist in the employ of the plaintiffs, who described minutely a titre test he made of a sample of the imported merchandise furnished him by Henry Pahle, foreman of plaintiffs' raw materials department. As the result of his test Mr. Johnson obtained a titre of 40.4° C.

Mr. Pahle, on being called to the stand, testified that he took a sample from 44 of the 177 barrels, or 25 per centum of the lot, with a 3-foot trier, inserting the trier as far as he could each time, and that he placed the material withdrawn from the 44 barrels in a pail, mixed it thoroughly, took a 1-quart sample therefrom and placed it in a quart-size tin can, labelled it, and turned it over to the laboratory.

In a deposition offered and received in evidence as Collective Exhibit 1, John Fullerton, superintendent of the Merchants Warehousing Co. of Dublin, Eire, states that he took a sample from 31 out of 154 of the barrels of merchandise identified as part of the importation here involved. The sample was transmitted to Alfred Jones, who, in a deposition received in evidence as Collective Exhibit 3, identified himself as a chemist in Liverpool, England, and stated that he subjected the sample to chemical analysis and to a titre test, and as a result thereof obtained a trier of 40.5° C.

Although, as pointed out by counsel for the Government, Mr. Jones' test was performed on a sample representing only 154 out of the 177 barrels involved, it is nevertheless some evidence in support of the claim made and is entitled to weight in the determination of the issue.

Plaintiffs also offered the oral testimony of William Holt, a buyer of 25 years' experience for an American manufacturer of soap, toilet articles, and glycerin, who stated that he would accept as a good delivery of tallow, as distinguished from grease, merchandise having an analysis and titre point such as found by Mr. Johnson.

Defendant's witnesses were the Government sampler who drew samples of the merchandise in issue, and two chemists who performed the titre test on portions of such samples. The sampler stated that he inserted a trier in 18 of the 177 barrels, or 10 per centum of the lot,

and placed the portion withdrawn in 18 4-ounce bottles, labelled them, and turned them over to the laboratory. He was unable to recall the length of the trier used.

Dr. Dwight A. Bartlett, a chemist in the United States laboratory located in the appraiser's stores in New York, testified that he performed the titre test on a composite sample from the 18 bottles referred to above and obtained a titre of 39° C., and Paul A. Chapman, also a Government chemist in the same laboratory, stated that he, too, performed the titre test on the same sample and obtained a titre of 37.7° C.

Plaintiffs' witness Johnson testified that a variation of $\frac{1}{10}$ of a degree centrigrade was the limit of tolerance when the test was performed by two different men on the same sample, and plaintiffs' counsel after calling Mr. Chapman's attention to the fact that his result was 1.3 degrees lower than Dr. Bartlett's asked him on cross-examination—

Is there a doubt in your mind as to its [Mr. Chapman's titre test] dependability?

to which Mr. Chapman replied:

Somewhat.

Without any reflection intended upon the methods used by the Government it is manifest that plaintiffs' sample was withdrawn under conditions which would tend to give a result more representative of the mass than in the case of the Government's sample. Plaintiffs' sample represented 25 per centum of the lot, while the Government's represented only 10 per centum, the minimum required to be examined under section 499 of the Tariff Act of 1930. The record shows that in the case of the plaintiffs' sample the trier was inserted to the bottom of each barrel, whereas there is some question as to whether the trier used by the Government sampler extended that far. The Government chemists disagreed as to the actual titre of the sample used by them, and in fact one expressed some doubt as to the dependability of his test.

From the foregoing it is our view that plaintiffs, by a preponderance in weight of the testimony, have established that the merchandise in issue is tallow and is entitled to classification under the provision therefor in paragraph 701 as claimed.

The protest is therefore sustained, and judgment will issue accordingly.